IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| VALARIE REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13-cv-3426 |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Valarie Reed appeals, pro se, the denial of her application for Social Security Disability Insurance Benefits and Supplemental Security Income (collectively "Disability Benefits") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 423 1381a, and 1382c. This appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Reed filed a Motion for Summary Judgment (d/e 10) (Reed Motion), and Defendant Commissioner of Social Security filed a Motion for Summary Affirmance (d/e 13) (Commissioner Motion). This matter is before the Court for a Report and Recommendation. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

## STATEMENT OF FACTS

Reed was born on May 21, 1965. She completed a high school education. She previously worked as a dining room attendant, a cashier and stocker at a discount tobacco store, and a manager of a tanning salon. Answer (d/e 8), attached Certified Transcript of Proceedings Before the Social Security Administration (R.) 28, 29-30, 275. She suffers from an immune system disorder, possibly systemic lupus erythematosus (SLE or lupus). R. 14. She applied for Disability Benefits on March 1, 2011. She alleged that her disability began on March 31, 2009. R. 275.

On March 22, 2011, Reed saw rheumatologist, Dr. Robert Trapp, M.D. for persistent arthralgias. Dr. Trapp did not observe any synovitis. Dr. Trapp diagnosed possible lupus. Dr. Trapp based his diagnosis on arthralgia, fatigue, skin rash, and an antinuclear antibody (ANA) test that showed minimally elevated results. Dr. Trapp prescribed Plaquenil and Meloxicam. R. 287-88.

On July 14, 2011, Reed saw a physiatry specialist, Dr. Edward Trudeau, M.D. to determine whether she should undergo EMG/NCV testing. Dr. Trudeau opined that Reed had a musculoskeletal condition rather than a neuropathic condition. He recommended continuing

treatment by Dr. Trapp. He did not believe he could provide any assistance at this time. R. 307-09.

On September 1, 2011, Reed saw Dr. Michal Dynda, M.D., to establish a relationship with him as her primary care physician. Reed complained of joint pain and a frequent rash. Reed said that the pain increased during the course of the day and improved with rest. Reed also reported difficulty grasping. On examination, Reed had full range of motion in all joints and 5/5 strength throughout her extremities. An X-ray of her right hip was normal. R. 320, 327-30.

On October 7, 2011, Reed called Dr. Dynda's office. Reed reported having more pain. Dr. Dynda prescribed Mobic. On October 28, 2011, Dr. Dynda prescribed a course of Prednisone. R. 323.

On November 16, 2011, Reed saw Dr. Trapp. Dr. Trapp observed swelling in her hands. Dr. Trapp ordered blood tests and told her to continue with her current medications and to return in two months. R. 344.

On December 12, 2011, Reed saw Dr. Dynda. Reed reported that her body aches had increased over the last several months. She reported that Dr. Trapp had performed tests that ruled out a lupus flare-up. On examination, Reed had full range of motion and 5/5 strength throughout; no stiffness and no pain with flexion and extension of the right hip. Dr. Dynda

observed some tenderness along the lumbar and scapular region and some joint tenderness in the hands, but no swelling.  Dr. Dynda prescribed Nortriptyline and Cyproheptadine.  R. 324-26.

On January 31, 2012, Reed saw Dr. Trapp.  Reed reported that the Nortriptyline helped with her shoulders and elbows, but she still had pain.  Dr. Trapp diagnosed SLE, stable, and muscle pain.  Dr. Trapp recommended physical therapy for the lower back and hip.  R. 343.

On April 3, 2012, Reed underwent physical therapy.  Reed tolerated the session without complaints of pain.  R. 336-37.  On April 5, 2012, Reed underwent a second therapy session.  Reed reported no pain relief or positive outcome from the therapy.  R. 339.  On April 10, 2012, Reed canceled the remaining physical therapy sessions because of pain.  R. 341-42.

On June 11, 2012, Reed saw Dr. Dynda.  Reed reported that her back and joint pain was not as bad since she started taking the Nortriptyline.  Reed reported, however, that she continued to have hip pain and experienced lumbar pain for the last two weeks.  The pain was much better when she was lying down.  The pain extended down to her toes during the day.  She did not have any numbness in her toes.  On examination, Dr. Dynda noted a soft tissue mass that was very tender to

touch and palpitation.  The mass felt like it had a cystic structure.  R. 354-56.  An X-ray of the lumbosacral spine showed minimal degenerative changes without inducible misalignment.  R. 357.

On June 20, 2012, the Administrative Law Judge (ALJ) conducted an evidentiary hearing.  Reed appeared in person and with her attorney.  Vocational expert Dr. James Lanier, Ph.D., also appeared.  R. 24-53.

Reed testified first at the hearing.  She testified that she lived with her boyfriend.  She testified that she drove to the hearing.  Driving caused pain in her lower back, hips, and legs.  She testified that if she drove for more than thirty minutes, her hands and elbows would also start to bother her.  R. 29.

Reed testified that she worked as a tanning salon manager from 1994 to October 2007.  She then worked as a cashier from late 2007 to March 2009.  She testified that she stopped working as a cashier, "Because I was on my feet the whole time, and I was having problems with my ribs, with pleurisy symptoms, and my hands were bother (sic) me from counting the change."  R. 30.  In 2010, she tried working as a dining room attendant, but quit because she was having problems, "[w]ith my legs, and my arms and hands, my feet, knees."  R. 31.

Reed testified that prolonged sitting upright, standing and walking caused pain. R. 31. The ALJ told Reed she could stand or move around during the hearing if she needed to. She stated that she needed to do so. R. 31. Reed testified that her medications, "help take some of the pain away, but it doesn't get rid of it entirely." R. 32.

Reed also testified that she took an antihistamine to treat the itching from rashes. R. 32. She described the itching from the rash as "insane." R. 37. She testified that she could not focus on anything else while she was itching, "The only thing I can think about is trying to get it to stop itching." R. 41.

The ALJ asked Reed about her problems with fatigue. Reed testified, "I just – I don't have the energy to do anything. I have a hard time paying attention, following conversations. I've asked people to repeat stuff when I'm feeling that way, fall asleep watching TV." R. 32.

Reed testified that her joints swell, primarily in her hands, feet and toes. She testified that the first two fingers on her right hand became swollen almost every day. R. 38. Reed testified that nothing helped with the swelling of her fingers, "I can't think of anything. Just wait, it, it goes down eventually, but nothing seems to help with the swelling." R. 39.

Reed testified that she tried physical therapy, but stopped the sessions because she received no relief from the therapy.  R. 33.

Reed testified that on good days she could walk halfway around the block, but on bad days, she had trouble walking from the bedroom to the bathroom.  R. 33.  Reed also testified that on good days she could walk around grocery shopping for fifteen or twenty minutes, but then her hips hurt and she had to stop and go home.  R. 42.  Reed testified that she could lift a gallon of milk if she used both hands.  Reed testified that her pain was "migratory," moving from one part of the body to another, except that the pain was constant in her lower back and hip.  R. 34.  She testified that she could dress herself, but needed additional time to do so because of the pain in her hands.  R. 35.

Reed testified that the pain made her irritable.  She also testified that she previously enjoyed fishing and gardening, but no longer engaged in those activities because of the pain.  R. 34-35.  She testified that she performed household chores in increments of ten or fifteen minutes with rests in between.  R. 35.

Reed testified that she usually spent a couple of hours lying down during the daytime.  She testified that on a bad day, she spent the entire day lying down except to go to the bathroom.  She testified, "I'll have it

probably – out of a week, I'll have maybe a couple of days that I can't get up off the couch to do anything, during a week." R. 42. Reed testified that she visited with friends and relatives for short periods of time because of her pain. R. 43.

Reed testified that she traveled a couple of times in the last year or two to see her parents in southeast Missouri. She testified that she rode with her niece and nephew. She testified that the drive took four hours. She testified that she was in pain by the time they reached St. Louis. R. 44.

Dr. Lanier then testified. The ALJ asked Dr. Lanier a series of hypothetical questions about a person with Reed's age, education, and work experience. The ALJ first asked Dr. Lanier:

> I'd like you to assume that this individual can lift, carry, push and/or pull no more than 20 pounds occasionally and no more than 10 pounds frequently. This individual can never climb ladders, ropes, or scaffolding. This individual can climb ramps and/or stairs, balance, stoop, kneel, crouch, and/or crawl no more than occasionally.

R. 47. Dr. Lanier opined that such a person could perform Reed's former employment as a tanning salon manager and cashier. R. 47.

The ALJ asked Dr. Lanier to assume the person was limited to grasping, handling and fingering no more than frequently. Dr. Lanier

opined that the person could still perform the two jobs of tanning salon manager and cashier. R. 47-48.

The ALJ asked Dr. Lanier to assume the person was limited to sedentary work. Dr. Lanier opined that such a person could not perform Reed's past work. R. 48. Dr. Lanier opined that the person could perform other jobs in the national economy, such as addresser, document preparer, and circuit board touch-up assembler. R. 48. Dr. Lanier opined that the person could still perform the addresser and document preparer jobs if the person needed to alternate between sitting and standing at least once every thirty minutes. R. 48.

Dr. Lanier opined that the person would be terminated from work if she missed an average of three days a month due to impairments. R. 49. Dr. Lanier also opined that the person could not work the jobs he identified if the person could not perform repetitive gross and fine manipulations for more than three to five minutes without resting for two to three minutes. R. 49-50. The hearing then ended.

## THE DECISION OF THE ALJ

The ALJ issued his decision on August 8, 2012. R. 11-19. The ALJ followed the five-step analysis set forth in Social Security Administration

Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to her prior work considering her age, education, work experience, and Residual Functional Capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the

Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ found that Reed met her burden at Steps 1 and 2. She had not engaged in substantial gainful activity since March 31, 2009, and she had severe impairments of an immune system disorder, possibly SLE. R. 13. At Step 3, the ALJ found that her impairments or combination of impairments did not meet or equal any Listing. R. 14-15.

At Step 4, the ALJ found that Reed had the RFC to perform light work except she could never climb ladders, ropes, or scaffolding; and she could occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and/or crawl. R. 15-16. The ALJ found that Reed's testimony about the extent of the disabling effects of her impairments was not credible. The ALJ stated that Reed was in severe discomfort during the hearing, slouching, rubbing her wrists, and changing position, but the ALJ noted that she did not exhibit the same behavior in her doctors' offices. The ALJ also noted that medical examinations showed full range of motion and strength. The physical therapy notes also indicated that she tolerated the sessions

without pain. The ALJ found that the objective evidence supported the RFC finding and Reed's testimony to the contrary was not credible. R. 17-18.

The ALJ then found at Step 4 that Reed could perform her prior work as a cashier and tanning salon manager. The ALJ relied on the expert opinions of Dr. Lanier to support this finding. The ALJ, thus, found that Reed was not disabled. R. 18.

Reed appealed. On November 6, 2013, the Appeals Council denied Reed's request for review. The decision of the ALJ then became the final decision of the Defendant Commissioner. R. 1. Reed then filed this action for judicial review.

## ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence. In making this review, the Court considers the evidence that was before the ALJ. Wolfe v. Shalala, 997 F.2d 321, 322 n.3 (7th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the findings if they are supported by substantial evidence, and may not substitute its judgment. Delgado v. Bowen, 782

F.2d 79, 82 (7th Cir. 1986). This Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record. Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ's decision is supported by substantial evidence. The RFC finding of limited light work is supported by Dr. Dynda's examinations in which he found that Reed had 5/5 strength throughout her extremities and full range of motion, and by the physical therapy notes that indicated that Reed could perform the exercises without pain. The opinion of Dr. Lanier supports the finding at Step 4 that Reed could perform her prior work. The conclusion that Reed was not disabled is supported by substantial evidence.

Reed has submitted medical evidence that was not before the ALJ to support her appeal. Such new evidence cannot be used to determine whether the ALJ's decision was supported by substantial evidence. The Court only considers the evidence that was before the ALJ. Wolfe, 997 F.2d at 322 n.3; Zblewski v. Schweiker, 732 F.2d 75, 76 n.2 (7th Cir. 1984) .

New evidence may sometimes provide a basis to remand the case to consider the new evidence. 42 U.S.C. § 405(g) sentence six. This Court can remand to consider her new evidence if the evidence is new and material, and if the claimant can demonstrate good cause for failing to present the evidence to the ALJ. Evidence is new if it was not in existence or available to the claimant at the time of the administrative hearing. Evidence is material if a reasonable probability exists that the Commissioner would have reached a different decision if the evidence had been considered. Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997).

Reed submits physical therapy records from March and April, 2012, which indicate that Reed suffered some pain and soreness from physical therapy exercises. Reed Motion, Exhibit A. Reed could have presented this evidence to the ALJ, but did not. The evidence, therefore, is not new. Reed also does not present any good cause to explain why she did not present the evidence to the ALJ. The March and April, 2012, physical therapy reports do not support a remand under § 405(g) sentence six.

Reed submits a radiology report dated July 5, 2013, eleven months after the decision of the ALJ. Reed Motion, Exhibit B, page 1. The July 5, 2013, report contains the results of an MRI of Reed's lumbar spine. The report states that Reed had multilevel degenerative disc disease, most

pronounced at the L5-S1level.  Reed also submits a radiology report dated September 25, 2013, more than a year after the decision of the ALJ.  The report records an intraoperative view of her lumbar spine taken in connection with a microdiscectomy performed on her herniated disc.  <u>Reed Motion</u>, Exhibit B, pages 3-4.

      The July 5, 2013, report and the September 25, 2013, reports are not material to this case.  The ALJ determined that Reed was not disabled from March 31, 2009, to August 8, 2012.  R. 18.  To be material, the new evidence must relate to Reed's condition during this time period.  <u>Schmidt v. Barnhart</u>, 395 F.3d 737, 742 (7th Cir. 2005).  The July 5, 2013, report is almost a year later, and the September 25, 2013, report is more than a year after the relevant time period ended.  In addition, a June 11, 2012, X-ray of Reed's lumbar spine showed mild degenerative disc disease and minimal degenerative changes without misalignment.  R. 357.  Thus, the medical evidence indicates that Reed's back condition deteriorated from the summer of 2012 to the summer of 2013.  The deterioration after August 2012, however, is not relevant to this case.  The reports from July 2013 and September 2013 are too remote to be relevant.  <u>See e.g.</u>, <u>Getch v. Astrue</u>, 539 F.3d 473, 484 (7th Cir. 2008) ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of

the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement."); Schmidt v. Barnhart, 395 F.3d at 742 (evidence of claimant's condition one to three years after the ALJ's decision were not material). Reed has failed to show that a reasonable probability exists that the Commissioner would have reached a different decision regarding whether she was disabled on or before August 8, 2012, if the ALJ considers medical reports from July and September of 2013.

Reed may file a new application for Disability Benefits and present her 2013 medical evidence with that application, but she has failed to show that the evidence is relevant to this application. See Getch, 539 F.3d at 484. This Court should not remand this case under § 405(g) sentence six to consider Reed's new evidence.

THEREFORE THIS COURT RECOMMENDS that the Defendant Commissioner of Social Security's Motion for Summary Affirmance (d/e 13) should be ALLOWED, and Plaintiff Valarie Reed's Motion for Summary Judgment (d/e 10) should be DENIED. The decision of the Commissioner should be AFFIRMED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within

fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986). See <u>Local Rule</u> 72.2.

ENTER: March 18, 2014

*s/ Tom Schanzle-Haskins*
UNITED STATES MAGISTRATE JUDGE
